IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KAYLA WEST, | |
| Plaintiff, | |
| | Civil Case No. 1:15-cv-0397-AT |
| v. | |
| D.J. MORTGAGE, LLC, | |
| Defendant. | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Kayla West ("Plaintiff") opposes Defendant's Partial Motion to Dismiss as to Counts I and III[1] as follows:

**I.    ARGUMENT**

The Federal Rules of Civil Procedure solely require a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Plaintiff's allegations need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Urquilla-Diaz v. Kaplan Univ.*, 2015 U.S. App. LEXIS 3776 (11th Cir. 2015), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim is facially plausible where the facts alleged permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A claim may survive a motion

---
1  Defendant does not move to dismiss Count II for negligence.

1

to dismiss even if it is "improbable that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely remote and unlikely." *Federer v. Midland Mortg. Co.*, 2012 U.S. Dist. LEXIS 166188 (N.D. Ga. 2012), *citing Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the Complaint as true and construe them in the light most favorable to the plaintiff. *Id; see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

The Supreme Court has recognized that the Fair Housing Act has a "broad and inclusive compass" and that its complaint-filing provision should be accorded a "generous construction." *Lee v. McCreary*, 2010 U.S. Dist. LEXIS 20400 (N.D. Ga. 2010), *citing City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (citation omitted).

    A.    <u>Plaintiff Has Pleaded a Claim of Hostile Housing Environment Based Upon Sexual Harassment in Count I</u>

Section 818 of the Fair Housing Act provides that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of....any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Section 3604 prohibits, *inter alia*, discrimination on the basis of sex in the rental of

housing. 42 U.S.C. § 3604. Claims of sexual harassment under the Fair Housing Act are analyzed analogously to harassment claims in the Title VII employment context. *See Butler v. Carrero*, 2013 U.S. Dist. LEXIS 130838 (N.D. Ga. 2013) (applying Title VII framework to FHA claim). Applied to housing, a claim is actionable when the offensive behavior "unreasonably interferes with use and enjoyment of the premises." *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

In the Eleventh Circuit a plaintiff states a claim of hostile environment where she shows that 1) she belongs to a protected group; 2) she has been subject to unwelcome sexual harassment; 3) the harassment was based on her sex; and 4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions [of the residency] and create a discriminatorily abusive [housing] environment...." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003).[2] Either severity or pervasiveness is sufficient to state a claim; both are not required. *Reeves v. C.H. Robinson Worldwide*, 594 F.3d 798, 809 (11th Cir. 2010) ("Either severity or pervasiveness is sufficient to establish a violation of Title VII.").[3] Courts look to the "totality of the circumstances" to determine

---

[2] A hostile environment analysis also requires showing a basis for the defendant's liability. *Id*. Under the FHA, it is sufficient to show that the actor was an agent or employee of defendant, and was acting within the scope of his employment. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). However, no such analysis is necessary here because Defendant has not moved to dismiss Plaintiff's claims on the basis that it is not liable for the harasser's conduct.

[3] Defendant erroneously stated the standard as "severe and pervasive" throughout its brief.  *See* Def. Mem. 7, 10.

whether harassment was severe or pervasive; it "does not turn solely on the number of incidents alleged by the plaintiff." *Vance v. Southern Bell,* 863 F.2d 1503, 1510 (11th Cir. 1989).

Plaintiff has unquestionably stated a claim of hostile housing environment that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Defendant does not contest that Plaintiff has pleaded the first three elements of her hostile environment claim. Her Complaint additionally includes specific factual allegations of conduct that a jury could find to be severe: while she signed her lease, she alleged that Gene Andrews, Defendant's property manager, "raised up [her] skirt and grabbed her genitals." Compl. at ¶17. Courts recognize physical grabbing as inherently severe sexual conduct. For instance, in *Cobb v. Sunshine Rest. Merger Sub, LLC*, 2011 U.S. Dist. LEXIS 2690 (M.D. Fla. 2011), the court found harassment was severe or pervasive where it consisted only of two occasions when the harasser grabbed the plaintiff's crotch area through his clothing. The court held: "Although the frequency of the conduct was only twice, the severity of the conduct is far greater. The conduct in this case was physically threatening and humiliating, unlike the myriad of cases that involve 'brushing' or 'touching.' Grabbing the crotch area of either sex certainly conveys a message that extends beyond workplace crudity...." Id. at *6; *see also Ortega v. Neil Jones Food Co.*, 2014 U.S. Dist. LEXIS 7306, *26-27 (N.D. Cal. 2014) (an "unwanted, inappropriate, sexualized touching" is the "form of sexual

harassment least tolerated by our legal system").

Although Plaintiff need only allege either severe <u>or</u> pervasive conduct to state her claim, she also made specific factual allegations of a course of harassing conduct that a jury could find to be pervasive.

In addition to the assault described above, the Complaint alleges:

Andrews told her "I'm gonna need you to give me a hug" when he accepted her as a tenant (¶13);

The following exchange of text messages, which plaintiff retained:

```
West:      FYI...The guy did not come to fix the door.
Andrews:   Ok.I will call him
West:      Thanks..
Andrews:   They will be there at 9 am
West:      Thanks
Andrews:   Maybe I can take you to lunch are [sic] breakfast soon?(¶22);
```

Andrews requested Plaintiff go on a date with him, which she refused (¶26);

Following her refusal, when she reported a broken furnace, Andrews threateningly told her he could "get her out" (which would include her children) and put other tenants into the property (¶33);

After she thanked him for arranging removal of mite-infested carpeting, the following exchange of text messages, which Plaintiff retained:

```
West:      Thanks u so much
Andrews:   You welcome. Maybe I can come get my pic
West:      Which one?
```

5

  Andrews: *The where [sic] I can see all that sexiness*
  West: You already saw me in person...lol
  Andrews: You got down
  West: Huh...
  Andrews: You are right
  Andrews: *Just hoping there was something else I could see?*
  West: Like what
  Andrews: *We should really talk in person* (¶35);

Following her refusal to accede to his sexual advances, Andrews told her "do what you have to do" when she reported a broken refrigerator, refusing to fix it (¶38);

Following her rebuffs, Andrews refused to repair her nonworking furnace, falsely telling Ms. West that it was a gas unit rather than electric (¶47-48), leaving her home in an uninhabitably cold condition.

In other words, Ms. West alleged a course of conduct involving repeated sexual advances and requests, including physical assault, culminating in a refusal to provide necessary repairs, after she refused to comply with those sexual requests.

This is precisely the type of conduct that "unreasonably interferes with use and enjoyment" of a dwelling. *Honce*, 1 F.3d at 1090. For instance, in *Beliveau v. Caras*, 873 F. Supp. 1393, 1398 (C.D. Cal. 1995), the court denied defendant's motion to dismiss a hostile housing environment claim where the plaintiff tenant experienced several instances of "off-color, flirtatious, and unwelcome remarks" from the resident apartment manager, as well as a single incident of offensive physical contact, wherein he touched her breast and buttock. The court noted that such conduct was particularly severe or

6

pervasive where the "alleged battery was committed....by one whose very role was to provide that safe [home] environment....There are few clearer examples of classic sexual harassment than an unpermitted, allegedly intentional, sexual touching. *Under no circumstances should a woman have to risk further physical jeopardy simply to state a claim for relief under Title VIII* [the Fair Housing Act]." *Id.* at 1398 (emphasis added).

The sexual touching to which Ms. West was subjected was even more extreme than in *Beliveau*, since Andrews actually lifted up her clothing to touch her genitals. *See also Williams v. Poretsky Mgmt.*, 955 F. Supp. 490 (D. Md. 1996) (denying summary judgment on hostile housing environment claim where harasser on one occasion pinned plaintiff against a table, rubbing his body on her and attempting to kiss her, and subsequently engaged in occasional verbal harassment); *Salisbury v. Hickman*, 974 F. Supp. 2d 1282 (E.D. Cal. 2013) (denying summary judgment and finding housing harassment could be severe or pervasive where harassment consisted solely of plaintiff being cornered by harasser twice, with concurrent verbal harassment, but not touched on any intimate body parts; and noting that "sexual harassment by someone in a position of authority is more likely to be emotionally and psychologically threatening....presumably, as the on-site [property] manager, [the harasser] is first in-line to respond to any issue that might interfere with [plaintiff's] use and enjoyment of her residence, such as a rent dispute or a request for repairs. [The harasser's] ability to influence [the plaintiff's] well-

being thus adds yet another degree of severity to [his] conduct").

At this early stage where Plaintiff need only allege facts sufficient for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 663, Ms. West's allegations are facially sufficient to plead a claim of hostile housing environment based upon severe or pervasive harassing conduct.

### B. Plaintiff Has Adequately Pleaded a Claim of Quid Pro Quo Sexual Harassment

The first count of Ms. West's Complaint survives based solely upon a hostile environment sexual harassment theory. However, it additionally pleads sufficient facts to survive on a theory of *quid pro quo* sexual harassment. The first three elements of a claim made under this theory are the same as the first three in a hostile environment claim, described *supra;* the fourth is that "the [plaintiff]'s reaction to harassment complained of affected tangible aspects of the [plaintiff]'s compensation, terms, conditions, or privileges of employment," *Mangrum v. Republic Indus.*, 260 F. Supp. 2d 1229, 1248 (N.D. Ga. 2003)--or, in this context, tangible housing benefits. "The acceptance or rejection of the harassment by [a plaintiff] must be an express or implied condition to the receipt of a [housing] benefit or the cause of a tangible [housing] detriment in order to create liability under this theory of sexual harassment." *Mangrum*, 260 F.Supp.2d at 1248 (citation omitted).

Andrews made acceptance of his sexual overtures an implied condition of the

receipt of housing benefits including refrigerator, furnace, and other repairs that were necessary to keep Ms. West's home in a habitable condition. At first, he provided benefits while linking them with requests for romantic and/or sexual involvement: he met Ms. West to sign her lease, and at the meeting grabbed her genitals (Compl. ¶17); he arranged a door repair, then immediately requested to take Ms. West to "lunch [or] breakfast soon" (Id. ¶22); he had infested carpeting removed, then immediately requested nude photos (Id. ¶35). A jury can conclude from the facts alleged that Andrews was communicating the need for Ms. West to "pay him back" for the housing services he provided. When Ms. West repeatedly refused to do so, Andrews simply stopped providing those housing benefits: he told Ms. West to "do what you have to do" rather than repair her refrigerator (Id. ¶38), and refused to repair her furnace, leaving her home freezing (Id. ¶47-48). He also told her he could "get her out" and replace her with other tenants (Id. ¶33). In other words, Ms. West's rejection of the harassment caused her the tangible housing detriment of making her home uninhabitable. Courts have recognized similar conduct as impermissible sexual harassment. *See Grieger v. Sheets*, 689 F. Supp. 835 (N.D. Ill. 1988) (tenant stated claim for sexual harassment under FHA where tenant refused sexual favors requested by property manager, and property manager subsequently harassed tenant by, *inter alia*, refusing to make repairs and threatening not to renew lease).

    Ms. West's harassment claim therefore survives not only on a hostile environment

theory, but independently, on a *quid pro quo* theory as well.

  C. <u>In Count III, Plaintiff Stated a Viable Claim of Interference Under the Fair Housing Act</u>

**1. Plaintiff has Alleged Interference Based Upon Her Eviction**

Plaintiff alleged that, because of her protected activities of resisting Andrews' sexual harassment, and complaining about him to Defendant, DJ Mortgage "fail[ed] to remedy conditions making her home uninhabitable and evict[ed] her from her residence." Compl. ¶88. This refusal and the eviction comprise her claim of Interference under the FHA, Count III of her Complaint. To state a claim of interference, plaintiff must plead that (1) she is a member of a protected class under the FHA, (2) she was engaged in the exercise or enjoyment of a right protected by the FHA, (3) the defendant coerced, threatened, intimidated, or interfered with the plaintiff's exercise of her FHA rights, and (4) defendant was motivated in part by an intent to discriminate. *Sackman v. Balfour Beatty Cmtys., LLC*, 2014 U.S. Dist. LEXIS 125389, *29-30 (S.D. Ga. 2014). She need only plead that discriminatory intent "played some role" in the Defendant's actions. *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 722 (11th Cir. 1991). She may ultimately prove intentional discrimination "either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the McDonnell Douglas test." *Sackman,* 2014 U.S. Dist. LEXIS 125389 at 31. However, "to withstand a motion to dismiss,....a plaintiff asserting discrimination....need not allege specific facts

establishing a prima facie case of the [defendant's] liability....That burden-shifting analysis is an evidentiary standard, not a pleading requirement, and thus it applies only to summary judgment motions and beyond." *Castillo v. Allegro Resort Mktg.*, 2015 U.S. App. LEXIS 4302, *8 (11th Cir. 2015). Rather, a plaintiff's complaint need only provide "enough factual matter (taken as true) to suggest intentional .... discrimination." Id. (internal citations omitted).

  Defendant moved to dismiss Plaintiff's interference claim to the extent that it is based upon the eviction because "Plaintiff's admission that she withheld rents due to be paid for her use of the Property....provides an independent, non-discriminatory basis for [the eviction] that does not violate federal law." Def. Mem. 11. As a matter of common sense, an eviction for nonpayment of rent is not "independent" of discriminatory motivations where Plaintiff has alleged that she told Defendant she was withholding rent due to Defendant's discriminatory refusal to provide repairs. *See e.g.* Compl. ¶56-57 ("[M]s. West met in person with....the owner of DJ Mortgage....At this meeting, she displayed to them the text messages Andrews had sent, among other things, requesting nude photographs and dates in response to Ms. West's requests for necessary repairs....Thompson [the owner] asked Ms. West if she would resume paying rent. Ms. West replied that she would do so after DJ remedied the problems that were making the home uninhabitable.").

However, even had Defendant alleged an alternate basis for eviction unrelated to discrimination, Plaintiff's only burden at this early stage is to allege "enough factual matter (taken as true) to suggest intentional....discrimination[,]" and she has done so. *See, e.g.* Compl. ¶56-57, *supra*; Compl. ¶42 (Ms. West sent DJ a letter.... : ..."[M]y kids are in the cold because the heat don't work and I don't think this is right,....every time [Andrews] did something to my home he asked for naked picture or asked to talk privately on the phone which I did not respond....Now I feel that because I did not entertain his advances and his sexual harassment he is giving me a hard time...."); Compl. ¶57 ("Through the winter and spring, DJ Mortgage did not repair Ms. West's heat.").

By suggesting alternative motivations, Defendant has only pointed out that questions of fact exist as to Defendant's subjective intent, which preclude dismissal of Plaintiff's claim. *See Potomac Grp. Home Corp. v. Montgomery Cnty., Md.*, 823 F. Supp. 1285, 1301 (D. Md. 1993) (whether defendants' conducting a surprise inspection, sending a deficiency letter, and holding a hearing constitutes retaliation "requires a determination of the subjective intent of the defendants in engaging in the challenged actions," and "will in large part be based upon the credibility of the witnesses at trial, and cannot be resolved by way of defendants' motion for summary judgment").

### 2. Plaintiff Has Alleged Interference Based Upon Defendant's Failure to Remedy Conditions Making Her Home Uninhabitable

Plaintiff alleges defendant made her home uninhabitable in retaliation for her

complaints about sexual harassment, which constituted interference with her rights under the FHA. Defendant argues that because Plaintiff did not raise those conditions as a defense to eviction, this claim is *res judicata*. The doctrine of *res judicata* prohibits the refiling of a claim that was or could have been raised in a prior proceeding. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). The claim is only barred where *all* of the following are true: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits in the prior action; (3) the parties are identical in both actions; and (4) the prior and present causes of action are the same. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (citations omitted). In the Eleventh Circuit, "[t]he principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). If the actions arise from the same "common nucleus of operative fact" or are "based upon the same factual predicate," the two are the same "claim" for *res judicata* purposes. *Id.*

      Plaintiff's claim is not *res judicata* for two reasons. First, the two claims are not the same because the primary right at issue in each is different. In the eviction proceeding, at issue was Plaintiff's right to continue to occupy the property. In this interference action, at issue is her right to complain about sex discrimination without her home being made uninhabitable in retaliation for her complaints. *Sackman*, 2014 U.S. Dist. LEXIS 125389,

*29-30 (right to be free from "coer[sion], threat[s], intimidat[ion], or interfere[nce] with the plaintiff's exercise of her FHA rights."). The two claims are distinct. *See Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179 (C.D. Cal. 2004) ("In light of the foregoing, the [unlawful detainer] Action and the present [FHA] action do not involve the same claims. As mentioned previously, the Stipulated Judgment determined Defendants' right to repossess the apartment if [plaintiff] failed to pay back rent. By contrast, the present FHA claims are premised on Defendants' alleged discriminatory acts toward [plaintiff] during his tenancy in the Apartment Building. In the current action, [plaintiff] does not contest possession.").

Second, Plaintiff's claim is not *res judicata* because the court that heard Defendant's eviction action against Plaintiff was not one of competent jurisdiction to hear this FHA interference claim.[4] Defendant brought the eviction proceeding in the Magistrate Court of Rockdale County, Georgia. The Magistrate Court is a court of limited jurisdiction, as set forth in O.C.G.A. § 15-10-2 (providing for jurisdiction over matters such as the hearing of applications for and the issuance of arrest and search warrants; the

---

4   Specifically, as alleged in the Complaint: 86. Plaintiff's resistance to Andrews demands for sexual favors constituted protected activity under the Fair Housing Act. 87. Plaintiff's complaints to Defendant concerning Andrews' conduct constituted protected activity under the Fair Housing Act. 88. Because of her protected activity, Defendant interfered with Plaintiff's rights under the Fair Housing Act, by failing to remedy conditions making her home uninhabitable and evicting her from her residence. 89. There was a causal connection between Plaintiff's protected activity and Defendant's adverse action.

14

trial of charges of violations of county ordinances and penal ordinances of state authorities; and the trial of civil claims including garnishment and attachment in which exclusive jurisdiction is not vested in the superior court and the amount demanded or the value of the property claimed does not exceed $15,000, among other matters.) It cannot hear a Federal Fair Housing Act claim, nor could it award the relief Plaintiff seeks in this action, therefore the instant claims are not barred by *res judicata*. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) ("[R]es judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action."); *U.S. v. Katz*, 2011 U.S. Dist. LEXIS 59159, *31 (S.D.N.Y. 2011) (holding Fair Housing Act sexual harassment claims were not *res judicata* as a result of prior eviction actions, because "[e]ven if the [plaintiffs] had actually sought redress for sexual harassment during the eviction proceedings [defendant] brought against them, as discussed above, the Housing Court [, a court of limited jurisdiction,] would have been without jurisdiction to hear those claims and afford the full measure of relief the [plaintiffs] seek in this lawsuit").

## II.  CONCLUSION

    For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

Dated:  April 20, 2015
     Mamaroneck, NY

Respectfully submitted,

LAW OFFICES OF JOSHUA FRIEDMAN, P.C.

*By:*  /s/ Rebecca Houlding
Rebecca Houlding, Esq.
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel:  888-369-1119 x5
Fax: 866-731-5553
rebecca@joshuafriedmanesq.com

*Admitted Pro Hac Vice*

Giselle Schuetz, Esq.
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel:  888-369-1119 x8
Fax:  866-731-5553
giselle@joshuafriedmanesq.com

*To Be Admitted Pro Hac Vice*

Orr & Brown, LLP
*/s/ Kristine Orr Brown*
Kristine Orr Brown
Georgia Bar No. 554630
P.O. Box 2944
Gainesville, GA 30503
(770) 534-1980 t
(770) 536-5910 f
kbrown@orrandbrown.com

Hill & Associates, PC
*/s/ Janet Elizabeth Hill*
Janet Elizabeth Hill

        Georgia Bar No. 354230
        1160 S Milledge Avenue, Suite 140
        Athens, GA 30605
        706.353.7272 t
        706.549.8446 f
        janet@hillworklaw.com

## CERTIFICATION OF FONT AND POINT SELECTIONS

Pursuant to Local Rule 7.1D, this certifies that this brief has been prepared in Times New Roman 14-point font as approved by this Court in Local Rule 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2015, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, as approved by Standing Order No. 04-01 of this Court, which will send notification of such filing to all attorneys of record.

          /s/ Rebecca Houlding
Rebecca Houlding, Esq.
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel:  888-369-1119 x5
Fax: 866-731-5553
rebecca@joshuafriedmanesq.com